UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SARAH LIPKIN,<br>    *Plaintiff*, | )<br>)<br>) | CASE NO. 3:23-cv-00127 (KAD) |
| v. | )<br>) | |
| VELMA GEORGE and CORNELL<br>SCOTT-HILL HEALTH<br>CORPORATION,<br>    *Defendants*. | )<br>)<br>)<br>) | MARCH 11, 2024 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT CORNELL SCOTT-HILL HEALTH CORPORATION'S MOTION TO DISMISS COUNT FOUR OF THE AMENDED COMPLAINT (ECF NO. 38)**

Kari A. Dooley, United States District Judge:

This case arises out of Plaintiff Sarah Lipkin's termination by their employer Defendant Cornell Scott-Hill Health Corporation ("CS-HHC"), which they allege was in violation of Conn. Gen. Stat. § 31-51q insofar as they were terminated in retaliation for the exercise of their constitutionally protected free speech rights. Pending before the Court is CS-HHC's motion to dismiss Count Four of the Amended Complaint, the only count brought against CS-HHC. Plaintiff opposes. For the reasons that follow, the motion is GRANTED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

When reviewing a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the Complaint, taken as true, and to documents attached to, incorporated by or otherwise integral to the Plaintiff's complaint. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 134 (D. Conn. 2018); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

**Factual Allegations**

Plaintiff was employed as an Advanced Practice Registered Nurse (APRN) by CS-HHC pursuant to a valid contract in effect from May 10, 2021, through May 9, 2022. Am. Compl. ¶ 8, ECF No. 33. They were assigned to the Greater New Haven Healthcare for the Homeless team at CS-HHC, and in that assignment provided weekly care to residents of the New Haven Inn, a hotel used as a temporary shelter for homeless persons operated by the City of New Haven. *Id.* ¶ 9. The Inn was staffed by employees of BHCare, Inc. *Id.* ¶ 10.

On the morning of March 29, 2022, Plaintiff learned that a homeless patient for whom they had been providing medical care had been in a hospital emergency room earlier that morning, having been sexually assaulted at gunpoint. *Id.* ¶ 11. Plaintiff had been providing care to this patient for months and was familiar with her history and vulnerabilities. *Id.* ¶ 12. Plaintiff proceeded to the New Haven Inn with their assistant. When they arrived at the Inn, Plaintiff learned that the patient and her partner were due to be discharged from the Inn the following

morning and would likely return to a tent in the same vicinity of the patient's sexual assault. *Id.* ¶ 13. Aware that other persons had been granted extended stays at the Inn for medical reasons, Plaintiff approached BHCare staff in the staff room in an effort to secure an extension of their patient's stay. *Id.* ¶ 14. Defendant Velma George, the Coordinator for Housing and Homelessness Services for the City of New Haven, was present. Plaintiff also expressed disappointment that more had not been done for the patient and her partner during the time they were residents at the Inn. *Id.* ¶ 16. In turn, BHCare staff became angry with Plaintiff, stating that they "cannot do more for clients than the clients are willing to do for themselves," and asked Plaintiff if they would help contact an intimate partner shelter to see if the patient could go there. Plaintiff responded that it was the case manager's role to pursue safe shelter for these clients and reiterated that this was not an intimate partner assault and likely the client wouldn't be eligible for stay at an IPV shelter. *Id.* ¶ 18. Then, BHCare staff began loudly accusing Plaintiff of not understanding how hard they work and how difficult their job is. Plaintiff repeated that they were concerned for their client's safety and wellbeing and that they were attempting to get appropriate care and support for their patient. *Id.* ¶ 19. Defendant George then approached Plaintiff, loudly and angrily telling them "You don't know what you are talking about." When Plaintiff responded by informing George that Plaintiff was there every week providing medical care for the residents, George responded by angrily lecturing Plaintiff on how they should do their job. When Plaintiff, in order to defuse the situation, stated that they were going to leave, George responded "We think you should leave." *Id.* ¶ 20. The following day, Plaintiff reported these conversations to their supervisors at CS-HHC, who expressed support for Plaintiff and further stated that they would speak with other contacts to help find safe shelter for these clients. *Id.* ¶ 22.

On or about April 6, 2022, angered by Plaintiff's conduct, George made a false complaint about Plaintiff to CS-HHC by email. In that complaint, George accused Plaintiff of being disrespectful and unprofessional in words and actions. *Id.* ¶¶ 23-24. George also reported to CS-HHC a separate incident in which she claimed that Plaintiff had misdiagnosed a patient and had failed to properly follow through on treating the patient. *Id.* ¶ 26.

**Discussion**

Plaintiff alleges that they were terminated by CS-HHC in violation of Section 31-51q, which creates a cause of action for damages against an employer for an employee who has been subject to discipline on account of the employee's exercise of constitutionally protected free speech rights. Specifically, it provides:

> [a]ny employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge ...."

Section 31-51q "extends the protection of federal and state constitutional rights in two respects. It provides coverage for private employees as well as for governmental employees, and it imposes liability on private employers as well as governmental employers." *Cotto v. United Technologies Corp.*, 251 Conn. 1, 6, 738 A.2d 623, 627 (1999). To establish a violation of Section 31-51q, "a plaintiff must demonstrate that: (1) She was exercising rights protected by the First Amendment to the United States Constitution (or an equivalent provision of the Connecticut Constitution); (2) she was fired or otherwise disciplined on account of her exercise of such rights; and (3) her exercise of such rights did not substantially or materially interfere with her bona fide performance or with her working relationship with her employer." *Brown v. Office*

4

*of State Comptroller*, 211 F. Supp. 3d 455, 478 (D. Conn. 2016), aff'd. in part, appeal dismissed, 885 F.3d 111 (2d Cir. 2018) (internal citations and punctuation omitted).

Defendant CS-HHC argues that Plaintiff has not plausibly alleged a violation under the statute under either the federal or state constitutions, maintaining that 1) the speech at issue was an employment-related grievance with no broader public purpose and therefore not protected under the First Amendment, and 2) the speech did not relate to a matter of public concern, did not implicate official dishonesty, serious wrongdoing, or a threat to public safety, and in any event is not the alleged reason for Plaintiff's termination.

**The First Amendment – U.S. Constitution**

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the United States Supreme Court held that when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and the Constitution does not therefore insulate those statements from employer discipline. Thus, the Court established a threshold inquiry – was the employee's speech made pursuant to their official duties? If yes, it was not entitled to First Amendment protection. In *Schumann v. Dianon Sys.*, 304 Conn. 585, 610-611 (2012), the Connecticut Supreme Court adopted *Garcetti* as applying to claims brought against private employers pursuant to Section 31-51q. As such, the initial question for this Court is whether Plaintiff has alleged speech that was made pursuant to or outside their official duties.

The *Garcetti* Court explained its historical jurisprudence on First Amendment protections for public employees as follows: "Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420, quoting *Connick v. Myers,* 461 U.S. 138, 154 (1983). Speech made "pursuant to" a public employee's job duties is

5

"speech that owes its existence to a public employee's professional responsibilities." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010), quoting *Garcetti,* 547 U.S. at 421. The objective inquiry into whether a public employee spoke "pursuant to" his or her official duties is "a practical one." *Weintraub,* 593 F.3d at 202. *"*Speech that government employers have not expressly required may still be "pursuant to official duties," so long as the speech is in furtherance of such duties." *Id.*, citing with approval *Williams v. Dallas Indep. Sch. Dist.,* 480 F.3d 689, 694 (5th Cir. 2007). Whether an employee is speaking pursuant to official duties is not susceptible to a bright-line rule. *Ross v. Breslin,* 693 F.3d 300, 306 (2d Cir. 2012). To determine whether a public employee speaks pursuant to his official duties, courts "examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two," along with other contextual factors such as whether the plaintiff's speech "was also conveyed to the public." *Id.; see also Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022). Joining several other Circuits, the Second Circuit in *Weintraub* held that under the First Amendment, "speech can be pursuant to a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Id.* at 203 (internal citations and quotations omitted).

    CS-HHC argues that as a threshold matter, the allegations in the Complaint belie any claim that Plaintiff was speaking outside their job responsibilities. Def. Mot. to Dismiss at 5, ECF No. 39. Plaintiff disagrees but offers only a tortured and illogical analysis to support their conclusion.

    Plaintiff alleges that they were an APRN employed by CS-HHC and assigned to the Greater New Haven Healthcare for the Homeless team at CS-HHC. As such, they provided care for the residents at the New Haven Inn, a residence for unhoused people operated by the City of

New Haven and staffed by personnel from BHCare, Inc. Plaintiff became concerned for one of their patients who they believed would be at imminent risk of significant harm if an alternative to the then plan for the patient was not changed. Plaintiff knew that other residents had been given extended stays at the Inn for medical issues. Plaintiff sought such an extension or alternatively, a different discharge plan for the patient. When Plaintiff brought their concerns to BHCare staff, the staff became angry and loudly accused Plaintiff of not understanding "how hard they work and how difficult their job is." Am. Compl. ¶ 18. Defendant George is also alleged to have loudly "attacked" Plaintiff when Plaintiff raised concerns for the patient. *Id.* ¶ 20. The following day, Plaintiff advised their supervisors at CS-HHC of their concerns. The supervisors expressed support for Plaintiff and stated that they "would speak with other contacts to help find safe shelter for" the patient. *Id.* ¶ 22.

It is clear from these allegations that Plaintiff's speech was not protected by the First Amendment. And the Court agrees with CS-HHC that *Weintraub* is particularly instructive. There, Plaintiff, a teacher, filed a grievance in response to the principal's failure to discipline a child who had thrown books in the classroom. The Court of Appeals held that the grievance was speech "pursuant to" his official duties because it was "part-and-parcel" of his concerns about his ability to "properly execute his duties" as a public school teacher. *Weintraub*, 593 F.3d at 203 (internal citations and quotations omitted).

So too here. Plaintiff alleges that they spoke to BHCare staff and Defendant George out of concern for and to advocate for their patient's well-being. Plaintiff was aware of other residents receiving an extension at the Inn due to medical concerns and sought such an extension. And it really should go without saying that an APRN who is charged with providing care for this vulnerable population will of necessity have occasion to express such concerns or engage in such

7

advocacy. Plaintiff does not argue to the contrary. Rather, they claim that because with this particular speech, they sought to obtain for the patient something they could not provide – an extended stay at the New Haven Inn – the speech was not "pursuant to" their work responsibilities. Pl. Opp. to Def. Mot. to Dismiss at 8, ECF No. 43. The Court disagrees. There can be no question that Plaintiff's speech "owes its existence to [their] professional responsibilities." *Weintraub,* 593 F.3d at 201, quoting *Garcetti*, 547 U.S. at 421. Further, the speech occurred at work and was inextricably intertwined with Plaintiff's job caring for the residents of the Inn, to include the patient for whom they were advocating. Nor did Plaintiff convey their speech to the public. *See also Shara,* 46 F. 4th at 81 (dismissal affirmed where plaintiff, a school bus driver, was terminated after he argued with a school district mechanic – and later with school district officials – over the frequency with which bus inspection results should be reported, and where plaintiff's arguments were had in his capacity as a school district employee, not as a private citizen); *Cohn v. Department of Education of City of New York*, 697 Fed. App'x 98, 99 (2d Cir. 2017) (affirming dismissal where plaintiff, a public school teacher, had expressed concerns to school principal and others about whether a colleague had improperly coached students in advance of the state exam, and finding plaintiff's speech to be "part and parcel" of his job responsibilities, i.e., ensuring the fair and proper administration of the examination and therefore unprotected by the First Amendment); *Ross v. Breslin,* 693 F.3d 300, 308 (2d Cir. 2012) (finding plaintiff's speech to be within her job responsibilities and not protected by the First Amendment where plaintiff, a payroll clerk typist, had brought certain financial irregularities to the attention of the school superintendent, an outside consultant, and the board of education).

The Court need not determine whether the speech was a matter of public concern because it was made "pursuant to" Plaintiff's official duties and is therefore not protected under the First Amendment.

**The Connecticut Constitution**

The free speech protections afforded under the Connecticut Constitution are broader than those afforded under the First Amendment. *Trusz v. UBS Realty Investors, LLC,* 319 Conn. 175, 212 (2015). In *Trusz,* the Connecticut Supreme Court adopted the modified *Pickering/Connick* standard put forth by Justice Souter in his *Garcetti* dissent to establish the scope of free speech protections in the employment context under the Connecticut Constitution. "Under this standard, if an employee's job related speech reflects a mere policy difference with the employer, it is not protected. It is only when the employee's speech is on a matter of public concern *and* implicates an employer's "official dishonesty ... other serious wrongdoing, or threats to health and safety" … that the speech trumps the employer's right to control its own employees and policies." *Id.* (emphasis added), citing *Garcetti*, 547 U.S. at 435 (Souter, J., dissenting).

The Court need not decide whether Plaintiff has adequately alleged protected speech under this standard because the Amended Complaint utterly fails to allege any facts which, if proven, would establish that Plaintiff's employer terminated them because of or in retaliation for this speech. Plaintiff alleges that they were terminated only after Defendant George falsely complained to CS-HHC that Plaintiff was unprofessional, disrespectful, had misdiagnosed a patient, and had failed to properly follow through on treating the patient.[1] Moreover, Plaintiff alleges that when Plaintiff told their supervisors at CS-HHC about their efforts to advocate for

---

[1] In a wholly conclusory paragraph, Plaintiff alleges that George threatened the relationship between CS-HHC and the City of New Haven if CS-HHC did not take action against Plaintiff "in retaliation for [their] speech criticizing the lack of support for" the patient. Am. Compl. ¶ 25.

9

their patient, the supervisors were *supportive* of Plaintiff's efforts and offered to assist with the patient's housing situation. So it is not simply that Plaintiff's allegations are lacking, they affirmatively belie any conclusion that their termination resulted from or was motivated by their advocacy on behalf of their patient.

As noted by CS-HHC, Plaintiff's real quarrel does not appear to be with their employer, who was "supportive" of their advocacy, but rather with Defendant George, who they allege manufactured a false accusation in response to their advocacy, thereby giving CS-HHC cause to terminate their employment contract. There are simply no allegations in the Amended Complaint by which to ascribe George's retaliatory motive to CS-HHC.

**Conclusion**

For all of the foregoing reasons, Defendant Cornell Scott-Health Corporation's motion to dismiss Count Four of the Amended Complaint is GRANTED. The Clerk of the Court is directed to terminate Cornell Scott-Health Corporation as a party.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of March 2024.

    /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE