UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SARAH LIPKIN, | ) | CASE NO. 3:23-cv-00127 (KAD) |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VELMA GEORGE and CORNELL | ) | MARCH 14, 2024 |
| SCOTT-HILL HEALTH | ) | |
| CORPORATION, | ) | |
|     *Defendants*. | | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT GEOREGE'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF NO. 40)**

Kari A. Dooley, United States District Judge:

This action arises out of Plaintiff Sarah Lipkin's termination from their employment with Cornell Scott-Health Corporation ("CS-HHC"), a contractor with the City of New Haven, contracted to provide health care services at the New Haven Inn, a temporary homeless shelter and warming facility in the City of New Haven. Plaintiff sues their employer as well as Defendant Velma George, the Coordinator for Homelessness Services for the City of New Haven. As to Defendant George, Plaintiff alleges retaliation in violation of their First and Fourteenth Amendment rights (Count One), defamation (Count Two), and tortious interference with contractual expectations (Count Three). Now pending is Defendant George's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which Plaintiff opposes. For the reasons that follow, the motion is DENIED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

1

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). When reviewing a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations in the Complaint, taken as true, and to documents attached to, incorporated by or otherwise integral to the Plaintiff's complaint. *See Mercer v. Schriro*, 337 F. Supp. 3d 109, 134 (D. Conn. 2018); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

**Factual Allegations**

Plaintiff was employed as an Advanced Practice Registered Nurse (APRN) by Defendant CS-HHC pursuant to a valid contract in effect from May 10, 2021, through May 9, 2022. Am. Compl. ¶ 8, ECF No. 33. They were assigned to the Greater New Haven Healthcare for the Homeless team at CS-HHC, and in that assignment provided weekly care to residents of the New Haven Inn, a hotel used as a temporary shelter for homeless persons operated by the City of New Haven. *Id.* ¶ 9. The Inn was staffed by employees of BHCare, Inc. *Id.* ¶ 10.

On the morning of March 29, 2022, Plaintiff learned that a homeless patient for whom they had been providing medical care had been in a hospital emergency room earlier that morning, having been sexually assaulted at gunpoint. *Id.* ¶ 11. Plaintiff had been providing care

to this patient for months and was familiar with her history and vulnerabilities. *Id.* ¶ 12. Plaintiff proceeded to the New Haven Inn with their assistant. When they arrived at the Inn, Plaintiff learned that the patient and her partner were due to be discharged from the Inn the following morning and would likely return to a tent in the same vicinity of the patient's sexual assault. *Id.* ¶ 13. Aware that other persons had been granted extended stays at the Inn for medical reasons, Plaintiff approached BHCare staff in the staff room in an effort to secure an extension of their patient's stay. *Id.* ¶ 14. Defendant George was present. Plaintiff also expressed disappointment that more had not been done for the patient and her partner during the time they were residents at the Inn. *Id.* ¶ 16. In turn, BHCare staff became angry with Plaintiff stating that they "cannot do more for clients than the clients are willing to do for themselves," and asked Plaintiff if they would help contact an intimate partner shelter to see if the patient could go there. Plaintiff responded that it was the case manager's role to pursue safe shelter for these clients and reiterated that this was not an intimate partner assault and likely the client wouldn't be eligible for stay at an IPV shelter. *Id.* ¶ 18. Then, BHCare staff began loudly accusing Plaintiff of not understanding how hard they work and how difficult their job is. Plaintiff repeated that they were concerned for their client's safety and wellbeing and that they were attempting to get appropriate care and support for their patient. *Id.* ¶ 19. Defendant George then approached Plaintiff, loudly and angrily telling them "You don't know what you are talking about." When Plaintiff responded by informing George that Plaintiff was there every week providing medical care for the residents, George responded by angrily lecturing Plaintiff on how they should do their job. When Plaintiff, in order to defuse the situation, stated that they were going to leave, George responded "We think you should leave." *Id.* ¶ 20. The following day, Plaintiff reported these conversations to their

supervisors at CS-HHC who expressed support for Plaintiff and further stated that they would speak with other contacts to help find safe shelter for these clients. *Id.* ¶ 22.

On or about April 6, 2022, angered by Plaintiff's conduct, George made a false complaint about Plaintiff to CS-HHC by email. In that complaint, George accused Plaintiff of being disrespectful and unprofessional in words and actions. *Id.* ¶¶ 23-24. George also reported to CS-HHC a separate incident in which she claimed that Plaintiff had misdiagnosed a patient and had failed to properly follow through on treating the patient. *Id.* ¶ 26.

**Discussion**

Defendant George seeks dismissal of all claims. She seeks dismissal of the First Amendment claim on the ground that Plaintiff's speech was "pursuant to" their job responsibilities and therefore not protected by the First Amendment. Def. George's Mot. to Dismiss ("Def. Mot.") at 12, ECF No. 40. Alternatively, she argues that Plaintiff's speech was not of public concern and therefore not protected by the First Amendment. *Id.* at 18. She next argues that the Court should decline to exercise supplemental jurisdiction over the state law claims, in light of the failure of the Section 1983 claim, or alternatively that these claims should be dismissed for failure to state a cognizable claim. *Id.* at 19. In response, Plaintiff argues that their speech in complaining about the patient's treatment was unquestionably protected by the First Amendment and that they have adequately pled each of their causes of action. Pl. Resp. to Def. George's Mot. to Dismiss ("Pl. Resp.") at 7, ECF No. 44.

**42 U.S.C. Section 1983**

Title 42, Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

4

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C.A. § 1983. The First Amendment is made applicable to the states through the Fourteenth Amendment. *Corren v. Condos*, 898 F.3d 209, 217 n.1. (2d Cir. 2018). A public municipal employee acting within the scope of their employment acts under color of state law. *Hayut v. State Univ. of New York*, 352 F.3d 733, 744 (2d Cir. 2003). Plaintiff has alleged that Defendant George was employed by the City of New Haven's Office of Housing and Homelessness Services as a Coordinator at the time of the alleged events. Am. Compl. ¶ 5. Thus, Plaintiff has adequately alleged that Defendant George acted under color of state law.

In order to state a First Amendment retaliation claim, Plaintiff must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks omitted)). The adverse action must have been sufficiently serious that it would deter a similarly situated person of ordinary firmness from exercising his right to speech. *See id.* at 93–94. The crux of Plaintiff's complaint is that Defendant George falsely accused Plaintiff of being unprofessional, disrespectful, and in some measure incompetent in retaliation for Plaintiff's advocacy on behalf of their patient.

Defendant first argues that Plaintiff's speech is not protected under the First Amendment under the standards set forth in *Garcetti v. Cabellos,* 547 U.S. 410 (2006). In *Garcetti,* the United States Supreme Court held that when public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and the Constitution does

not therefore insulate those statements from employer discipline. Thus, the Court established a threshold inquiry – was the employee speech made "pursuant to" their official duties? If yes, it is not generally entitled to First Amendment protection. Defendant George therefore argues that in advocating for their patient, Plaintiff was speaking in the course of their official responsibilities. Def. Mot. at 17.

However, Plaintiff was not a public employee. They did not work for the City of New Haven or any other public agency or entity. Plaintiff worked under contract for CS-HHC, an indisputably private entity with which the City of New Haven contracted for certain services. *See* Am. Compl. ¶¶ 8-9. Although Defendant George argues that the *Garcetti* analysis applies notwithstanding Plaintiff's status as a private employee of a private employer, she does so without authority. The Court has not found any authority applying the *Garcetti* threshold analysis to an employee of a private sector entity who provides contracted-for services to a public entity such as occurred here. Indeed, the Second Circuit has expressly rejected the application of *Garcetti* to a former public employee who alleged municipal retaliation for speech that he made *after* the termination of his employment. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008). The Court therefore rejects the argument that because Plaintiff's speech was pursuant to their official duties, it was not protected by the First Amendment.[1]

Defendant George next argues that Plaintiff's speech was not on a matter of public concern but was purely personal in nature. Def. Mot. at 18. This argument also stems from authority which governs First Amendment claims by employees who work in the public sector.

---

[1] Ironically, for purposes of Plaintiff's claim against their employer pursuant to Conn. Gen. Stat. Section 31-51q, the *Garcetti* threshold analysis did apply to these allegations. *See* ECF No. 59, Memorandum of Decision on Defendant Cornell Scott-Health Corporation' Motion to Dismiss. However, this is because the Connecticut Supreme Court has expressly adopted *Garcetti* in the context of claims brought against private employers pursuant to Section 31-51q alleging a violation of the First Amendment. *Schumann v. Dianon Sys.*, 304 Conn. 585, 610-611 (2012).

As discussed above, Plaintiff was a private sector employee who worked for an entity that contracted to perform services for the City of New Haven. The employer's decision to contract with a public entity did not accordingly restrict Plaintiff's First Amendment rights as contemplated under the *Pickering/Connick* analysis for public sector employee First Amendment claims.[2] Indeed, Plaintiff correctly asserts that a private citizen asserting a First Amendment retaliation claim "must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Plaintiff's advocacy for their medically vulnerable and homeless patient was protected by the First Amendment.[3] Plaintiff has plausibly alleged that, in response to and in retaliation for Plaintiff's advocacy, Defendant George sent a complaint to Plaintiff's employer falsely accusing them of being unprofessional, disrespectful and with respect to one patient, incompetent. Finally, Plaintiff alleges that as a direct result of Defendant George's false accusations, they were terminated and their contract with CS-HHC was not renewed. *See id.* at 732 (a plaintiff asserting

---

[2] The Court recognizes that the law involving First Amendment rights of public employees has been extended to include independent contractors. *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 678 (1996) (government agency could not terminate contracts in retaliation for an independent contractor's exercise of First Amendment rights because there is "no reason to believe that proper application of the *Pickering* balancing test cannot accommodate the differences between employees and independent contractors"). But Plaintiff is not an independent contractor with the City of New Haven. Their employer is an independent contractor and this is not a situation where the City of New Haven terminated its contract with CS-HHC. This is a matter where Defendant George is alleged to have sent a false accusation about Plaintiff to Plaintiff's contracted employer who terminated Plaintiff and failed to renew their employment contract as a result.

[3] Even if the *Pickering/Connick* balancing test applied to this workplace speech, concededly occurring at a city run facility, based upon the allegations, accepted as true, Plaintiff's advocacy would be on a matter of public concern. Plaintiff describes a dangerous and dire situation facing their patient, a patient who is alleged to have recently been sexually assaulted at gun point, had a history of sexual trauma and PTSD, and was going to be sent back to the streets imminently to the very location where the sexual assault had occurred. How our government administrators react to circumstances such as these facing the most vulnerable among the population is always a matter of public concern. *See Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 440 (S.D.N.Y. 2005) (whether a contract dispute would lead to individuals with HIV/AIDS becoming homeless was a matter of public concern).

a First Amendment violation may allege non-speech related but concrete harm related to his First Amendment rights).

Plaintiff has plausibly alleged a First Amendment violation against Defendant George.

**Defamation**

"Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014). "At common law, to establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Gleason v. Smolinski*, 319 Conn. 394, 430 (2015) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627–28 (2009)). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 431 (quoting *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004)). "[T]o be actionable, the statement must be false . . . and under the common law, truth is an affirmative defense to defamation . . . the determination of the truthfulness of a statement is a question of fact for the jury." *Id.* (quoting *Cweklinsky*, 267 Conn. at 228–29). The statement must also "convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Crismale v. Walston*, 184 Conn. App. 1, 18 (App. Ct. 2018).

Libel per se, as is alleged here, is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. *Stevens v. Khalily*, 220 Conn. App. 634, 646–47, *cert. denied*, 348 Conn. 915 (2023). "When the defamatory words

are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it." *Id.* (citing *Lega Siciliana Social Club, Inc. v. St. Germaine*, 77 Conn. App. 846, 852, cert. denied, 267 Conn. 901 (2003)). Connecticut law generally recognizes two classes of defamation per se: (1) statements that accuse a party of a crime involving moral turpitude or to which an infamous penalty is attached, and (2) statements that accuse a party of improper conduct or lack of skill or integrity in his or her profession or business and the statement is calculated to cause injury to that party in such profession or business." *Id.* (citing *Silano v. Cooney*, 189 Conn. App. 235, 242 (2019)). Plaintiff alleges the latter.

Defendant George attaches to her motion her email to Plaintiff's employer as appropriate for the Court's consideration insofar as it is the basis upon which Plaintiff brings their defamation claim. Def. Mot. at 22. Plaintiff argues that the Court's consideration of the email is foreclosed on a 12(b)(6) motion. Pl. Resp. at 4. The Court agrees with the Defendant. In considering a motion to dismiss the court may consider matters of which judicial notice may be taken, any statements or documents incorporated in the complaint by reference, or any document that is not attached or incorporated by reference "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal citations and quotations omitted). *See also P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-CV-1441 (VAB), 2015 WL 4425793, at *2 (D. Conn. July 17, 2015) (when deciding a motion to dismiss, the court may consider the allegations contained within the four corners of the complaint, documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference). Because Plaintiff

9

makes repeated reference to the email in question throughout the Amended Complaint, the Court considers it "integral" to the Complaint.

Defendant argues that the defamation per se claim fails because the email expresses only Defendant George's opinion – specifically the statement that Defendant George was disappointed at Plaintiff's "level of disrespect and unprofessionalism" and was concerned "about [Plaintiff's] ability to serve our clients with dignity and [their] ability to work collaboratively with partner agencies." Def. Mot. at 22-23. While the email certainly contains some of Defendant George's opinions, it also contains a number of factual assertions which could tend to damage the professional standing or reputation of the Plaintiff: she describes in detail Plaintiff's conduct during the confrontation in the staff room on March 29, 2022; she relayed that staff had also complained about Plaintiff being disrespectful to both staff and clients; she relayed an example of Plaintiff mistreating, misdiagnosing, and failing to provide proper (or any) care for a client; and in connection with this particular client's care she accused Plaintiff of employing "delay tactics" and being utterly dismissive of the staff concerns or the client's needs. Ex. A to Def. Mot. at 2, ECF No. 40-2. Plaintiff alleges that George's description of the events of March 29, 2022, and her accusations were false. Am. Compl. ¶¶ 24, 27. They are sufficiently factual in nature to survive a Rule 12(b)(6) motion to dismiss.

### Tortious Interference with Contractual Relations

"A claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351 (2007).

Defendant seeks dismissal of Count Three on the basis that "Plaintiff fails to set forth a legally cognizable claim for tortious interference, arguing that Plaintiff failed to allege that Defendant "by her conduct" interfered with Plaintiff's contract with their employer. Def. Mot. at 25. However, Plaintiff explicitly stated in the Amended Complaint that "as a result" of Defendant's email to CS-HHC, "CS-HHC terminated and refused to renew Lipkin's contract of employment." Am. Compl. ¶ 28. These facts, liberally construed, state a plausible claim that CS-HHC did not continue Plaintiff's employment relationship because of Defendant's allegedly libelous email. *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 419 (D. Conn. 2018) (complaint stated sufficient facts for tortious interference claim where plaintiff lost customers as a result of defendant's derogatory comments aimed at potential enthusiastic customers). Defendant additionally seeks dismissal of Count Three on the basis that the "tort" relied upon to support this claim is Count Two, the defamation claim. Def. Mot. at 25. As the Court has denied the motion to dismiss Count Two, so too does the Court deny the motion as to Count Three.

**Qualified Immunity**

Lastly, Defendant George argues that she is entitled to qualified immunity because her complained-of conduct does not violate a clearly established constitutional right. Def. Mot. at 25-26. Defendant George does not articulate this argument with specificity, simply stating that "it cannot be said that every reasonable official would have understood any of the defendant's alleged actions to violate the constitutional rights of the plaintiff, as claimed." *Id.* at 29.

Generally, questions of immunity should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). But "[t]he immunity question cannot be resolved before the earliest possible stage, i.e., prior to ascertainment of the truth of the plausible

11

factual allegations on which a finding of qualified immunity is premised." *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (internal quotation marks and citation omitted). Where a defendant chooses to press the immunity question at the pleadings stage, "the facts supporting the defense must appear on the face of the complaint, or in its attachments and documents incorporated by reference." *Sabir v. Williams*, 52 F.4th 51, 63–64 (2d Cir. 2022) (internal citations and punctuation omitted), cert. dismissed, 143 S. Ct. 2694, 216 L. Ed. 2d 1284 (2023). "Not only must the facts supporting the defense appear on the face of the complaint, but ... the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citations and quotation marks omitted). Furthermore, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* A qualified immunity defense at the pleadings stage thus "faces a formidable hurdle ... and is usually not successful." *Sabir*, 52 F.4th at 63–64 (internal citations and quotation marks omitted); *see also Chamberlain*, 960 F.3d at 110 ("[A]s a general rule, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion") (internal citations and quotation marks omitted).

Defendant George does not satisfy this stringent standard. A governmental official is entitled to qualified immunity if (1) his or her conduct did not violate a constitutional right or (2) the right at issue was not "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To determine if a right is clearly established, courts consider "(1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official

would have understood that his or her acts were unlawful." *Clark v. Boughton*, No. 3:21-CV-1372 (SRU), 2022 WL 4778582, at *15 (D. Conn. Oct. 3, 2022) (citing *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532 (2d Cir. 1993). Because a "reasonably competent public official should know the law governing his conduct," qualified immunity "ordinarily should fail" in cases where "the law was clearly established." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

It is well-established that a government official's retaliation against a private citizen for engaging in constitutionally protected speech is an infringement of the First Amendment right. *See Clark*, 2022 WL 4778582 at *16 (collecting cases); *Dobosz v. Walsh*, 892 F.2d 1135, 1141 (2d Cir. 1989) ("[T]he proscription of retaliation for a plaintiff's exercise of First Amendment rights has long been established"). And while Defendant again argues that it is not clearly established that speech concerning the care of a homeless person is a matter of public concern protected by the First Amendment (Def. Rep. to Pl. Resp. at 8, ECF No. 46), as stated *supra*, Plaintiff was not a public employee and accordingly their speech "need not have been on a matter of public concern for it to fall within the protection of the First Amendment." *Williams*, 535 F.3d at 77; *see also supra* n.3. Plaintiff has plausibly pled facts, which if proven, demonstrate that Defendant George violated their First Amendment rights and thus Defendant George's qualified immunity defense fails at this stage of the pleadings.

**Conclusion**

For the foregoing reasons, Defendant George's motion to dismiss is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 14th day of March 2024.

                                     */s/ Kari A. Dooley*
                                     KARI A. DOOLEY
                                     UNITED STATES DISTRICT JUDGE